Opinion filed June 21,
2012

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-12-00042-CV

                                                    __________

 

                IN THE
INTEREST OF M.L.S. AND S.H., CHILDREN



 

                                   On
Appeal from the 118th District Court

 

                                                          Howard
County, Texas

 

                                                     Trial
Court Cause No. 47,675

 



 

M E M O R A N D
U M   O P I N I O N

 

            This
is an accelerated appeal of the trial court’s order terminating parental
rights.  We affirm.

            Appellant
is the mother of M.L.S. and S.H.  At the time of trial, M.L.S. was three years
old, and S.H. was eleven months old.  Both children were born with cocaine in
their systems.  Three days after S.H. was born, the Texas Department of Family
and Protective Services filed a petition seeking protection of the children,
conservatorship, and termination of parental rights.   The court appointed the
Department as the temporary sole managing conservator of the children, and the
Department placed the children in a foster home.

            After
a bench trial, the trial court found that termination of appellant’s parental
rights as to M.L.S and S.H. was in the best interest of both children and that appellant
had (1) knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered the physical or emotional well-being
of the children; (2) engaged in conduct or knowingly placed the children with
persons who engaged in conduct that endangered the physical or emotional
well-being of the children; (3) failed to comply with the provisions of a court
order that specifically established the actions necessary for her to obtain the
return of her children; (4) used a controlled substance in a manner that
endangered the health or safety of the children and failed to complete a
court-ordered substance abuse treatment program or, after completing the
program, continued to abuse a controlled substance; and (5) been the cause of
the children being born addicted to alcohol or a controlled substance.  See Tex. Fam. Code. Ann. §§ 161.001(1)(D),
(E), (O), (P), (R); 161.001(2) (West Supp. 2011).  The trial court also
terminated the rights of the unknown father of M.L.S. and the known father of
S.H.  Neither father appealed the trial court’s order.  The trial court
appointed the Department as the permanent managing conservator of the children.

            In
ten issues, appellant alleges that the evidence was legally and factually
insufficient to support the trial court’s findings as to each of the first four
grounds for termination listed above and to support the trial court’s finding
that termination was in the best interest of the children.  However, appellant
does not challenge the legal and factual sufficiency of the evidence as to the
trial court’s finding that she was the cause of the children being born
addicted to alcohol or a controlled substance under Section 161.001(1)(R). “Only
one predicate finding under section 161.001(1) is necessary to support a
judgment of termination when there is also a finding that termination is in the
child’s best interest.”  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).              Although
the trial court’s oral pronouncement of judgment only included findings that appellant’s
parental rights should be terminated based on Section 161.001(1)(D), (E), (O),
and (P), the written judgment of the trial court also included a finding that
her rights should be terminated under subsection (R).  When there is an
inconsistency between a written judgment and an oral pronouncement of judgment,
the written judgment controls.  In re A.S.G., 345 S.W.3d 443, 448 (Tex.
App.—San Antonio 2011, no pet.); In re K.M.B., 148 S.W.3d 618, 622 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).  Because appellant does not challenge
the trial court’s written finding that she was the cause of M.L.S. and S.H. being
born addicted to alcohol or a controlled substance under subsection (R), we
need not address her arguments, in Issues One through Eight, that the evidence
was legally and factually insufficient to support the other four grounds for
termination found by the trial court.  We overrule appellant’s first eight
issues on appeal.  

            In appellant’s
ninth and tenth issues, she contends that the evidence was legally and
factually insufficient to support the trial court’s ruling that termination was
in the best interest of the children under Section 161.001(2).  

            To
determine whether the evidence is legally sufficient, we review the evidence in
the light most favorable to the finding to determine whether a reasonable trier
of fact could have formed a firm belief or conviction that the finding was true. 
In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).  We must assume that the
factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so, and we must disregard all evidence that a reasonable factfinder
could have disbelieved.  Id.

            To
determine whether the evidence is factually sufficient in a parental
termination case, we look to see whether a factfinder could reasonably form a
firm belief or conviction about the truth of the Department’s allegations.  In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002).  If, in light of the entire record,
there is disputed evidence that a reasonable factfinder could not have resolved
in favor of the finding and if that disputed evidence is so significant that a
factfinder could not have reasonably formed a firm belief or conviction that
the finding was true, then the evidence is factually insufficient.  In re
J.F.C., 96 S.W.3d at 266.

            The
Texas Supreme Court has recognized several factors to consider in determining
whether termination is in the best interest of the children: (1) the desires of
the children; (2) the emotional and physical needs of the children now and in
the future; (3) the emotional and physical danger to the children now and in
the future; (4) the parental abilities of the individuals seeking custody; (5)
the programs available to assist these individuals to promote the best interest
of the children; (6) the plans for the children by these individuals or by the
agency seeking custody; (7) the stability of the home or proposed placement;
(8) the acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the
acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371–72
(Tex. 1976).  This list of factors is not exhaustive, and not all of the
factors must be considered in order to support a finding that termination is in
the best interest of the children.  In re C.H., 89 S.W.3d at 27.    

            Appellant
testified that she had three children over a period of nine years and that,
during those nine years, she used cocaine.  Not only were M.L.S. and S.H. born
with cocaine in their systems, as we have previously noted, but her oldest
child was also born with cocaine in his system.  He has lived with his father
since he was three or four.  Appellant agreed that, when she used drugs before,
during, and after her pregnancies, she was placing her children in conditions
that endangered their physical and emotional well-being.

            As
part of appellant’s family service plan, she was required to participate in
counseling, and she successfully did.  Her counselor recommended that she
complete an inpatient substance abuse program.  At the completion of the
inpatient program, she was advised to complete an outpatient program and attend
AA/NA meetings.  She testified that she had not completed any portion of the
outpatient program because it was located in Midland and she did not have a
ride or enough money for other transportation; she lived in Big Spring.  It was
her understanding that the Department was going to help her find an outpatient
program in Big Spring, but that did not occur.  She also testified that she had
not recently been to any AA meetings; NA meetings were not offered in Big
Spring.  Appellant was participating in random drug testing, and all of her
drug tests had come back negative.

            Appellant
was also required to attend parenting classes as part of her service plan.  She
testified that she attended three classes but was unable to attend any other
classes due to her work schedule.  Shawna Cuevis, a conservatorship supervisor
and caseworker for the Department, testified that the Department only received
documentation that appellant participated in one class, not three.

            Norma
Lopez, an administrative assistant at the Department, supervised appellant’s
visits with her children.  She testified that appellant had not missed any
recent visits and that, in all, she only remembered appellant missing one or
two.  However, appellant would regularly cut her two-hour visits short by
thirty to forty-five minutes.  Although appellant acted appropriately around
her children and her children recognized her and seemed to enjoy their time
with her, Lopez did not think that they were bonded the way a mother and her
children should be bonded.   Deborah Morton, the children’s CASA advocate,
testified that she observed one visitation between the children and appellant
and that, in her opinion, the children did not appear to be bonded with appellant,
although they did appear to be comfortable.

            At
the time of trial, M.L.S. and S.H. had lived in foster care with Jamie and
Brian Mathis for eleven months.  Jamie testified that, when M.L.S. first came
to live with them, he was very aggressive.  He would bang his head against the
walls, try and pull out his hair, scratch his skin, and yell at the top of his
lungs.  He would also act out sexually on oversized stuffed animals they had in
the home.  M.L.S. had many behavioral issues immediately after visiting with
appellant, such as screaming, kicking, pulling out his hair, intentionally
defecating himself, and throwing his “sippy cup” against the window in the
car.  He also had frequent nightmares.  When he turned three, he began going to
play therapy.  The therapy has helped with his aggression, and he now only has
aggressive moments after supervised visits with appellant.

             Jamie
had to take S.H. to the emergency room for breathing tremors when she was five days
old.  After S.H.’s first visit with appellant, S.H. suffered from the same
tremors.  Jamie took S.H. directly to the doctor after a subsequent visit so
that the doctor could listen to her breathing.  Due to her allergy to cigarette
smoke, S.H. was having difficulty breathing and was gasping for air.  S.H. was
diagnosed with allergic rhinitis, and smoking restrictions were put into place. 
For S.H.’s health and physical well-being, Jamie believed that it was in S.H.’s
best interest to not be around anyone that had been smoking.  S.H. also
required daily joint compressions to keep her from becoming stiff.

            Although
appellant was aware of her daughter’s allergy, she continued to smoke.  However,
appellant testified that she would quit smoking if necessary.  Appellant’s
father and appellant’s boyfriend also smoked, but both would quit if the
children were returned.

            Appellant
testified that she had a three-bedroom home available for the children if they
were returned to her.  However, appellant did not currently reside in that home
and took the position that she did not need to prepare an appropriate place for
her kids to live unless she got them back.  At the time of the trial, appellant
lived with her boyfriend in a one-bedroom home.  She had lived with her
boyfriend for approximately five months, and she planned to continue to live
with him if the children were returned.  Her boyfriend was on parole from a
conviction for possession of methamphetamine.  He had also previously been
investigated by CPS.  Appellant believed that her children living with her and
her boyfriend, despite his criminal and CPS history, was in their best interest
because he was a changed man.  Cuevis disagreed and testified that the
Department’s position was that the children would not be safe in an environment
that included appellant’s boyfriend.

            On
the two occasions that Morton visited their home, it smelled very strongly of
smoke.  She was very disappointed and did not feel that they were taking S.H.’s
condition seriously.  Morton also believed that they would continue to smoke. 

            Appellant’s
father testified that, in the event the children were not returned to his
daughter, he would be willing and able to provide a home for them and care for
them.  Morton testified that there was a very strong odor of smoke on the two
occasions she visited his home.  There were also twenty to thirty cigarette
butts in ashtrays inside his home.  Appellant’s father acknowledged that he had
smoked for thirty years but said he would quit if the children were placed in
his custody.  He had quit for lengths of time in the past and said he would do
whatever it took to ensure that S.H. was in a safe and appropriate home in
light of her respiratory problems.  Morton did not feel that appellant’s father
was taking S.H.’s condition seriously, and she believed that he would continue
to smoke.  Appellant’s father also had a criminal history that included serving
time on probation and parole prior to his children being born.  In addition, he
had been investigated by CPS five to eight times; each case was dismissed.  The
last time he was investigated by CPS was ten or fifteen years before the trial.

            Elyse
Starr, a foster home developer for the Department, testified that appellant’s
father had been recommended as a relative that the children could live with,
but he never provided the Department with the required paperwork for someone
with a criminal history.  In order for the Department to complete a risk
evaluation on an individual with a criminal history, the individual is required
to send the Department a personal letter attesting to his criminal history,
explaining how his life has changed since the criminal activity, and stating
why his home should be considered for the children’s placement.  Appellant’s
father did send a letter detailing why he should be considered for the
placement of his grandchildren, but he never sent a letter addressing his
criminal past and how he had changed.  Although Starr had originally sent the
request to the wrong address, she testified that she had since furnished appellant’s
father with the details of the request on numerous occasions.  In her
experience, she usually receives the requested information and completes a risk
evaluation in thirty days.  Appellant’s father testified that he was never told
to send a letter explaining how he had changed. 

            Jamie
testified that both children had adapted well to living with her and her
husband.  Although they were living in a two-bedroom, one-bathroom rental at
the time of trial, they were under contract on a three-bedroom, two-bathroom
home and were planning to move into that home within a month.  Jamie testified
that she and her husband had accepted both children into their home, that they
had bonded with both children, and that both children were thriving.

            Morton
testified that she observed the children in the Mathis home and believed that
they were thriving.  She had no concerns about the children continuing to
reside with the Mathises and believed that it was in the best interest of the children
to remain in their care.  Morton also testified that, based on her observations,
it would be detrimental to the children if they were placed with appellant and
her boyfriend or with appellant’s father.

            Cuevis
testified that she was comfortable and satisfied with the children’s placement
in the Mathis home.  She believed that they were in a safe environment and that
the Mathises were making every reasonable effort to control the children’s
environment so that they could properly thrive and grow.  Cuevis testified that
it was the Department’s recommendation, based on the best interest of the
children, that appellant’s parental rights be terminated.

            Having
reviewed the evidence in the light most favorable to the best interest finding
under the Holley factors, we hold that the trial court could have formed
a firm belief or conviction that terminating appellant’s parental rights was in
the best interest of M.L.S. and S.H.  We also hold that the disputed evidence
as to the best interest finding was not so significant that the trial court
could not have reasonably formed a firm belief or conviction that termination
was in the children’s best interest.  The evidence was legally and factually
sufficient to support the trial court’s best interest finding.  Appellant’s
ninth and tenth issues are overruled.  

            The order
of the trial court is affirmed.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

June 21, 2012

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.